Anderson, J.
This was an action of covenant, brought upon an obligation in these words:
“Three years after date we bind ourselves, our heirs, &c., to pay to Samuel S. Wrightsman the sum of two thousand dollars, without interest, in funds current in the State of Virginia, being money borrowed by us on joint accouut.
*434 “As witness our hands and seals this 7th day of July, one thousand eight hundred and sixty-three.
(Signed) “EL W. Eowyer. [Seal.]
“ Sam’l M. Carper.” [Seal.]
The court gave judgment for $277.77, with interest thereon from the 7th of July 1866. To which judgment the plaintiff obtained a supersedeas from one of the judges of this court.
Several errors are assigned in the petition. First, setting aside the verdict of the jury of the 9th of September 1871, and granting a new trial; second, setting aside the verdict of the jury of the 6th of April 1872, and granting a new trial; and third, in sustaining the demurrer to the evidence. The grounds of the two first assignments of error will be noticed in considering the last — the demurrer to the evidence.
The court does hot seem to have sustained the demurrer. On the contrary it gave judgment for the lowest alternative assessment of damages by the jury. The question as to the plaintiff’s right of recovery was not submitted to the jury, but only the assessment of damages, in case the court should determine the law in favor of the plaintiff. Elpon the demurrer the court was the judge both of the law and the facts, and it was only the province of the jury to assess the damages. Accordingly the jury found the damages to be $2,000, with interest, &c., on one construction of the contract, if the court should so construe it upon the evidence; upon another construction of the contract, if the court should so construe it, they assessed the damages at $277.77, with interest, &c.; and upon another construction of the contract, if the court should so construe it, they assessed the damages at $1,360.50, with interest thereon from the 7th of July 1866 till payment. This verdict seems *435 to have covered the whole ground of contention, and to have ascertained what should be the plaintiff’s recovery in damages in either aspect in which the case might be viewed by the court. And the court being of opinion, from the evidence, that the contract was entered into with reference to Confederate States treasury notes as a standard of value, and was to be fulfilled and performed in such notes, gave the plaintiff' judgment for $277.77, with interest, according to the findiug of the jury in such case. And it now devolves upon this court to determine whether, upon the evidence certified, there is error in that judgment.
If the bond was the only evidence in the record, it being for a loan of money at a time when Confederate money, as is judicially known, was the only currency; and when contracts were almost universally made with reference to that currency as a standard of value, I think the fair presumption would be that the lending of Confederate money was the consideration of the obligation; that the contract was made with reference to it as the standard of value, and that it wras payable in the same kind of currency. (See Dearing & Rucker; Miller and Franklin v. The City of Lynchburg; Meredith v. Salmon; Walker’s ex’or v. Page & al.; Hilb. v. Peytons; and Calbraith v. The Porcelain Earthenware Co.) And if that were so, I should not be disposed to disturb the judgment of the Circuit court. But I think the parol evidence repels that presumption. It shows that the consideration of the obligation for $2,000, payablefin three yeai’s, without interest, was $2,500 in Confederate treasury notes; from which it would seem that Confederate treasury notes were not the standard of value to which reference was had in the contract. It is also further proved that it was the intention of the parties to fix the *436 clay of payment so remote that it would not fall due until after the war; and that the parties considered the probabilities whether it would be payable in Confederate currency or not. The borrowers calculated that the war would result in favor of the Confederate States, and that, although it would be payable in a better currency, it would be Confederate; but that if it did not result in favor of the Confederacy, the bond would have to be discharged in United States currency. This they did not think probable, and therefore, as they were getting $2,500 for $2,000 without interest for three years, they were willing to run the risk. It is evident, from their own testimony, that they were aware of this risk, and that it entered into their calculations; and that they contemplated that this contingency might arise, in which the obligation they were assuming might have to be discharged in United States currency. Thus they made a contract of hazard to pay $2,000, in three years, without interest, not in gold, but in funds current at the maturity of the bond, whether those funds were Confederate or Federal depending upon the result of the war. Such I think is evident from the testimony of the obligors themselves; and it accords with the testimony of the obligee. He did not know what would be current funds after the war, whether Confederate or Federal; but he was willing to run the risk, and to take $2,000 in whatever funds were current when the bond.fell due. So that I am obliged to regard it as a contract of hazard, the risk being the contingency, which was in the contemplation of both parties, whether the war would result for or against their country. Whether such a contract was lawful and could be enforced, whatever might be my opinion if it were an open question, I deem it unnecessary to say, as, since the decision of Boulware v. *437 Newton, it lias not been regarded as an open question, that decision having been followed in subsequent cases, but with the declaration that the principle should not be extended in its application: which I understand to mean that unless it clearly appears that the parties contracted with reference to a contingency that the war should result in the overthrow of the Confederacy and the destruction of its currency, and the substitution of United States currency instead, and that it was contemplated and intended by the parties that in such event the contract should be solvable in United States currency, the principle of Boulware v. Newton should not be applied. I think it is evident in this case that it was in the contemplation of the parties that such a contingency might arise, and that, in that event, the obligation should be discharged in the funds which w’ere then current, though it should bo Uuited States currency.
But even in Boulware v. Newton it was not hold that the obligor should pay the face of the bond. Judge Ilives, in whose opinion the other judges concurred,says: It w’ould be scarcely proper at this time to anticipate and prejudge a question that may hereafter arise out of the obligation to pay in ‘current funds? This is a grave question, which may not arise, and should not be decided except in a proper case, and upon the fullest consideration.” Then Boulware v. Newton does not go so far as to hold that upon a contract payable in “current funds” the obligee was entitled to recover the face of the bond. The question is raised in this case pointedly by the verdict of the jury. And we come now to its consideration. It can hardly be regarded as an open question. It has been raised and decided by this court in two cases, and in both decided the same way: in Beirne &c. v. Dunlap, 8 Leigh 514; and in the recent case of *438 Dungan v. Henderlite, 21 Gratt. 149. The former case was an action of debt upon an obligation, dated June 12, 1833, to pay on the 1st of September 1834 “ the sum of $813.79, in notes of the United States bank or either of the Virginia banks.” There was a demurrer to the declaration, on the ground that debt would not lie. This court held that debt would not lie upon the obligation, and that the demurrer was well taken. Judge Parker said that a contract “to pay $813.79 in bonds or bank paper means bonds or notes calling for that sum.” “Paper,” he says, “ may rise or depreciate in value before the day of payment; and if the day passes when the contract is to be fulfilled, the measure of the obligee’s rights and of the obligor’s liabilities, is the value of the notes on that day, to be ascertained by the verdict of a jury, and awarded in damages.” Again: “Whei’e the named sum is to-be paid in any determinate quantity of a collateral ai’tiele, subject to fluctuation in its-market price, (and what was more so than “ current funds” at the period of the maturity of this obligation and since, except Confederate currency prior to the overthrow of the Confederacy?) the value of that article is the thing due; and as it may be more or less than the named sum for which the creditor is willing to take the article, it must be estimated in damages by a jury.” Again he says: “ It is bank paper the obligors engage to pay and the obligee to receive; and if it is uot paid at the day, it is its value then which may be claimed in damages.” In the same case Judge Tucker says: “ It cannot be questioned that they might, at the day, discharge the note by the tender of notes of the specified banks to the nominal amount, however depreciated they might be. And although the day be past, yet the creditor can only demand that to which he is entitled by the contract. What was the contract % *439 To pay so much in hank notes (in this case in ‘current funds’). Suppose them depreciated one-half. Then, if they had been paid at the day, he would have received the value, only $406.89. And if so, the failure to pay then was an injury to him of that amount, and no more.” What is meant by the phrase “current funds” in this obligation ? I think it means, obviously, the paper circulation, whatever it might be, as contradistinguished from specie. Judge Staples, in Meredith & als. v. Salmon, says: “A contract of this sort is substantially the same as a contract to pay in Confedei-ate States notes. 21 Gratt. 762-768. The written contract, or obligation in that case, was to pay in “current funds.”
In Dungan v. Henderlite, supra, .the obligation was for $800, payable twelve months after date in the “ currency of Virginia and North Carolina money.” Judge Christian, who delivered the opinion, in which all the other judges concurred, says: “It was substantially a contract to pay Virginia and North Carolina bank notes to a certain specified amount, expressed in words as áppropriate as any other, to signify how much bank paper was to be paid, and is equivalent to an engagement to pay bank notes amounting to $800, or so many bank notes as on their face will nominally make that sum.” In that case the whole court held that au action of debt could not be maintained on the obligation. And the principle decided in Beirne v. Dunlap, which is much relied on in the opinion, is reaffirmed. Judge Christian further says: “ I am of opinion that in this case the obligation of the defendant was to pay, and of the plaintiff was to receive, Virginia and North Carolina State bank notes, and the commodity being of a determinate quantity, subject to fluctuation in its market price, the value of that currency is the thing that is due, and that can only be estimated in damages by a jury.”
*440 It seems to me that under these two decisions' of this court the principle ought no longer to be questioned, and that it should be regarded as res' adjudicata. To hold that the obligee is entitled to recover the face of the bond in this case would be to go beyond what was held in Boulware v. Newton, and to overturn the decisions of this court in the two cases which I have cited. If the principle of those cases is applied to this, the obligee was entitled to recover only the value of $2,000 in funds current at the maturity of the obligation; and the verdict of the jury has ascertained that to be $1,360.54. The value of that currency has been fluctuating from that day to this, but has been appreciating until it approximates the gold standard. To give a judgment now for the face of the bond, though it might be satisfied in legal tenders, would be to give the obligee more than his contract entitled him to, and would impose a heavier liability on the obligors than their contract imposes; because on the day when this obligation fell due “ current funds,” — that is, United States currency, which was current funds in Virginia, — legal tenders and all were at such a depreciation that $2,000 in such currency, according to the verdict of the jury, was worth only $1,360.54. And if $2,000 in currency was not paid at the day, in the language of Judge Parker, “ it is its value then which may be claimed in damages,” — which, we have seen, is $1,360.54. And in the language of Judge Tucker, in the same case, “ the failure to pay then was an injury to him (the obligee) of that amount, and no more; ” which is reiterated by Judge Christian, for the whole court, in Dungan v. Henderlite, supra. I am of opinion, therefore, both upon reason and authority, that the judgment should have been for $1,360.54.
Por the same reasons I think there was no error in *441 the judgment of the court, setting aside the two previous verdicts and granting the defendants new trials.
Upon the whole I am opinion to reverse the judgment of the Circuit court, and to give judgment for the plaintiff for §1,360,54, to he discharged in gold or its equivalent in United States currency constituting a legal tender for payment of debts, with interest from the 7th day of July 1866 till payment
Moncure, P., and Christian, J., concurred with Anderson, J., in reversing the judgment; but they would have given a judgment for the whole amount.
Staples and Bouldin, Js., concurred in the opinion of Anderson, J.
The judgment was as follows:
The court having maturely considered the transcript of the-record of the judgment aforesaid and the arguments of counsel, is of opinion, for reasons stated in waiting and filed with the record, that the judgment of the said Circuit court is erroneous: Therefore it is considered that the same be reversed and annulled, and that the plaintiff'in error recover against the defendants in error his costs by him expended in the prosecution of his writ of error and supersedeas aforesaid here; and this court proceeding to render such judgment as the said Circuit court ought to have rendered, it is further -considered, that the plaintiff’ recover against the defendants thirteen hundred and sixty dollars and fifty-four cents, wdth interest thereon, to be computed after the rate •of six per centum per annum, from the 7th day of July 1866 till payment; to be discharged in gold or its equi *442 valent in United States currency constituting a legal tender for tlie payment of debts, and his costs by him about his suit in this behalf expended in the said Circuit court.
Judgment reversed.